UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JOAN JOHNSON,

        Plaintiff,

   v.

STATE OF OHIO, *et al.*,

        Defendants.

Case No. 2:24-cv-1527
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

This matter is before the Court on two Motions to Dismiss. Defendants the State of Ohio, the Ohio Department of Rehabilitation and Correction, Lebanon Correctional Institution, Pickaway Correctional Institution, as well as individual Defendants Melissa Moody-Betley, Carolyn Reif, Jennifer Capannari, Randall Weaver, Chris Logsdon, and Amber Stanley, first moved to dismiss Plaintiff Joan Johnson's Amended Complaint. (Mot., ECF No. 21.) At that time, the remaining Defendants had not been served. (*Id.* PageID 228, n.1; *see also* ECF No. 32.)

After being served, Defendants Dr. Raja, Brenda Grooms, Kayla Swann, Genet Woldehiwot, Nicholas Gomulinski, and Fatmata Hartley asked the Court to incorporate all arguments from the first Motion to Dismiss and to apply those arguments to Ms. Johnson's claims against them. (ECF No. 53, PageID 328.) Ms. Johnson opposed the first Motion to Dismiss (Opp., ECF No. 35), and Defendants replied (Reply, ECF No. 38). For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** the Motions to Dismiss.

## BACKGROUND

Ms. Johnson filed this lawsuit as the Executor of the Estate of Darez Duff, her 21-year-old son who died while incarcerated by the State of Ohio and the Ohio Department of Rehabilitation and Correction ("ODRC"). (Am. Compl., ECF No. 18, ¶¶ 1, 7, 10.)

1

I. **Factual Background**

Ms. Johnson alleges that Mr. Duff suffered from several health issues from January to April 2022. (*See id.*) First, Mr. Duff contracted COVID-19 on January 15, 2022, while housed at the Pickaway Correctional Institution. (*Id.* ¶ 25.) Defendant Nurse Fatmata Hartley noted that Mr. Duff had jaundice-like red eyes with dilated pupils and placed him in restrictive housing. (*Id.* ¶ 26.) A few weeks later, Ms. Johnson alleges that Mr. Duff reported that he was suffering from a severe headache and a sore throat. (*Id.* ¶ 27.) Defendant Nurse Genet Woldehiwot instructed Mr. Duff to drink more fluids and showed him how to use an inhaler. (*Id.* ¶ 28.)

Mr. Duff was then transferred to the Lebanon Correctional Institution on February 11, 2022. (*Id.* ¶ 29.) A few weeks later, on March 3, 2022, Mr. Duff was seen by Defendant Melissa Moody-Betley for what Mr. Duff believed was a bug bite that was getting bigger. (*Id.* ¶ 31.) Nurse Moody-Betley used hot compression to treat the affected area. (*Id.*) On March 11, 2022, Mr. Duff developed another boil on his neck. (*Id.* ¶ 32.) Defendants Dr. Raja and Nurse Darcy Thompson saw Mr. Duff and prescribed him Keflex to treat what they thought was a bacterial infection. (*Id.*) The boil burst on March 15, 2022. (*Id.* ¶ 33.) Defendant Carloyn Reif, a nurse-practitioner, treated Mr. Duff and "noted cellulitis" and that "there was a concern for hepatitis." (*Id.*) Four days later, Mr. Duff complained of illness again. (*Id.* ¶ 34.) Nurse Moody-Betley noted that the wound had healed, but that there was a history of staph infection. (*Id.*)

Two weeks later, correctional officers found Mr. Duff severely ill in his cell and took him to the infirmary. (*Id.* ¶ 35.) Mr. Duff suffered from diarrhea, vomiting, decreased cognitive abilities, and shallow breathing. (*Id.*) Hours later Dr. Raja and Nurse Moody-Betley transported him to the hospital, where he passed away the next day, on April 3, 2022. (*Id.* ¶¶ 37–38.) Ms. Johnson alleges that Mr. Duff's cause of death was complications from "pneumonia, SARS, Covid-19, MRSA, and a severe kidney infection." (*Id.* ¶ 38.)

## II. Procedural Background

Ms. Johnson filed this lawsuit under 42 U.S.C. § 1983 alleging that Defendants were deliberately indifferent to Mr. Duff's serious health conditions in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution. (*See* Am. Compl., ¶¶ 39–50.) She also brings a state-law claim for wrongful death under Ohio Revised Code § 2125.01.[1] (*Id.* ¶ 47.)

When she first filed her complaint, on April 2, 2024, she mistakenly asserted that she was the executor of the estate of Mr. Duff. (*Id.* ¶¶ 3–4.) Defendants moved to dismiss the first complaint on that basis. (ECF No. 11.) Ms. Johnson was legally appointed the executor of the estate on June 25, 2024, and filed her Amended Complaint the next day. (Am. Compl., ¶¶ 7–8.)

She named seventeen Defendants in her Amended Complaint, including the State of Ohio, ODRC, Lebanon Correctional Institution, Pickaway Correctional Institution, as well as the doctors and nurses from both facilities who attended to Mr. Duff and were employed by ODRC. (*Id.*) The individual Defendants are named in both their individual and official capacities. (*Id.* ¶ 20.) After effecting service on most Defendants, the Defendants who had been served moved to dismiss for lack of subject matter jurisdiction and for failing to state a claim for relief. (Mot., ECF No. 21.) Ms. Johnson opposed the Motion, but agreed that ODRC, the Lebanon Correctional Institution, and the Pickaway Correctional Institution were not legal entities capable of being sued. (Opp., PageID 274). She agreed to dismiss those three Defendants without prejudice. (*Id.*) The Court construed her notice of voluntary dismissal as a motion to drop a party under Rule 21 of the Federal Rules of Civil Procedure and granted it. (ECF No. 37.)

---

[1] Ms. Johnson's Amended Complaint references Ohio Revised Code § 2305.113(E)(3)(C). (Am. Compl., ¶ 47.) Ohio Revised Code § 2305.113 sets out a cause of action for medical malpractice. But in her Memorandum in Opposition to the Motion to Dismiss, Ms. Johnson states that she "did not bring a medical malpractice claim against Defendants, nor [] claims for negligence, assault, and/or battery." (Opp., PageID 274.) The Court construes her claim as a single state-law claim for wrongful death under Ohio Revised Code § 2125.01.

3

After completing service on the remaining Defendants, those Defendants also moved to dismiss the Complaint. (ECF No. 53.) They ask the Court to "incorporate all facts, law, legal arguments and analysis from Defendants' Motion to Dismiss . . . and [the] Reply . . . and apply those arguments to all claims against them." (*Id.* PageID 328.) The Court considers the first-filed Motion to Dismiss (ECF No. 21) the operative Motion and addresses the arguments made therein.

### STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted). Federal subject matter jurisdiction "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

A court may dismiss an action under Rule 12(b)(1) when it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) (permitting courts to dismiss an action "at any time" for lack of subject matter jurisdiction). When a defendant challenges a complaint on its face under this rule, as Defendants do here, the defendant challenges "the sufficiency of the pleading itself." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). "On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Id.* "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

Courts also may dismiss an action for failure to state a claim upon which relief can be granted under Rule 12(b)(6). To state a claim upon which relief may be granted, a plaintiff must satisfy the pleading requirements set forth in Rule 8(a). Rule 8(a)(2) requires a pleading to contain

4

a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. (clarifying the plausibility standard in *Twombly*). Furthermore, "[a]lthough for purposes of a motion to dismiss [a court] must take all the factual allegations in the complaint as true, '[the court is] not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 677–79 (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted).

## ANALYSIS

The Court finds that Ms. Johnson's Amended Complaint relates back to the first-filed Complaint and she has standing to bring this lawsuit as executor of Mr. Duff's estate. That said, the Court dismisses her state-law wrongful death claim under the Eleventh Amendment and Ohio Revised Code § 9.86, and her claims against several individual Defendants against whom Ms. Johnson did not make any allegations. Last, the Court concludes that Ms. Johnson plausibly alleged a § 1983 claim that Defendants were deliberately indifferent to Mr. Duff's serious medical needs to survive the Motion to Dismiss.

**I.     Ms. Johnson has standing as the executor of Mr. Duff's estate to sue Defendants.**

Defendants first move to dismiss Ms. Johnson's Complaint because she was not the executor of Mr. Duff's estate at the time the lawsuit was filed, and thus lacked legal standing to initiate this lawsuit. (Mot., PageID 233.) Ms. Johnson responds that her June 25, 2024, appointment as executor relates back to the filing of the Complaint and cures any defect in her first complaint. (Opp., PageID 273.)

5

Defendants' argument raises two related legal concepts—capacity to sue and standing to sue. Federal law provides that the law of the forum state determines the capacity to sue and be sued in federal court. Fed. R. Civ. P. 17(b)(3). Ohio law provides that the victim, or his estate's representative may prosecute a § 1983 claim. *Chambers v. Sanders*, 63 F.4th 1092, 1100 (6th Cir. 2023) (citation omitted); *see also Plate v. Johnson*, No. 3:15CV1699, 2018 U.S. Dist. LEXIS 124002, at *12 (N.D. Ohio July 25, 2018) (explaining that when an executor brings a § 1983 claim, they sue "not to obtain a remedy for an injury done to [them] personally;" but rather "on behalf of an estate").

"[W]hen an individual is killed by the wrongful acts of another, the personal representative of the decedent's estate may bring a survival action *for the decedent's own injuries* leading to his or her death, as well as a wrongful-death action *for the injuries suffered by the beneficiaries of the decedent* as a result of the death." *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1261 (Ohio 2007) (emphasis in original). A "survival action" means that the cause of action survives the death of the decedent. *Jaco v. Bloechle*, 739 F.2d 239, 241–45 (6th Cir. 1984)) (citing Ohio Rev. Code § 2305.21)). "As opposed to a survival claim, through which a decedent's estate may recover for the injuries suffered by the decedent before his death, a wrongful-death claim belongs to the decedent's beneficiaries." *Peters*, 873 N.E.2d at 1261 (comparing Ohio Rev. Code §§ 2125.01 and 2152(A)(1)). "Although they are pursued by the same nominal party, [courts] have long recognized the separate nature of these claims[.]" *Id.*

Section 1983 claims are personal to Mr. Duff and can be asserted only by his personal representative. And for a wrongful death claim, the estate only has capacity to sue to seek redress for the alleged injuries through a representative or executor. Ms. Johnson admits she was not the executor of the estate at the time she filed the lawsuit. (Am. Compl. ¶¶ 3–4.) Unless her subsequent appointment as executor, as alleged in the Amended Complaint, relates back to the first-filed

6

Complaint, she lacks standing to sue on behalf of the estate. *Miller v. Collins*, No. 23-3191, 2023 U.S. App. LEXIS 29681, at *9 (6th Cir. Nov. 6, 2023) (explaining that courts determine an executor's standing and capacity to sue at the time the complaint is filed).

Rule 15(c)(1) of the Federal Rules of Civil Procedure states that an amended pleading relates back to the date of the original pleading if any of the following apply:

> (A) The law that provides the applicable statute of limitations allows relation back;
>
> (B) The amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading; or
>
> (C) The amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). The purpose of the relation back doctrine is to ensure that cases are resolved "on their merits rather than the technicalities of pleadings." *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000) (internal quotation marks omitted).

Ms. Johnson's Amended Complaint shows that she has been legally certified as executor as of June 25, 2024 and the amendment asserts claims that arose out of the same conduct, transaction, or occurrence set out in her first complaint. *See* Fed. R. Civ. P. 15(c)(1)(B). The purpose of the relation back doctrine—to resolve cases on their merits, rather than pleading technicalities—would be best served by allowing her status as executor to relate back to her first complaint. For similar reasons, the Northern District of Ohio allowed a plaintiff's amended complaint, that showed that the plaintiff was appointed personal representative, to relate back to

the start of the lawsuit under Rule 15(c)(1)(B). *Klinger v. Corr. Corp. of Am., Inc.*, No. 4:11CV2299, 2012 U.S. Dist. LEXIS 175984, at *24 (N.D. Ohio Oct. 23, 2012).

Defendants rely on *Miller v. Collins* to argue that Ms. Johnson's Amended Complaint cannot relate back to the start of the lawsuit and thus she lacks standing to sue. (Mot., PageID 233–34 (citing *Miller,* 2023 U.S. App. LEXIS 29681, at *9.) But in that case, the plaintiff was not appointed as a representative of the estate when he sought leave to amend the complaint and to relate the amended complaint back to the original complaint. *Id.* The Sixth Circuit explained that a "pending application to be named administrator does not suffice for purposes of Article III standing." *Id.*

Here, Ms. Johnson does not merely have a "pending application to be named" executor. *Id.* She was formally certified as the executor of Mr. Duff's estate two months after filing the lawsuit, and before Defendants moved to dismiss. (Am. Compl., ¶¶ 4–5, 7.) At the time she filed her first complaint, she mistakenly believed that she was the executor, unlike the plaintiff in *Miller* who knew he was not. (*Id.*) *Miller* is distinguishable and Defendants' arguments to the contrary are unpersuasive. Ms. Johnson's appointment as the executor of Mr. Duff's estate, as alleged in her Amended Complaint, relates back to the date of that her first complaint was filed.

She also has standing to sue. Standing is a concept rooted in Article III's cases and controversies requirement and ensures that the plaintiff has a personal stake in the outcome of the case. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *see also* U.S. Const. art. III. § 2. To have standing, a plaintiff must have "suffered an injury in fact" (1) that is actual or imminent, (2) that is "fairly traceable to the challenged conduct of the defendant," and (3) that is "likely to be redressed by a favorable judicial decision." *Id.*

Ms. Johnson alleges that Mr. Duff suffered civil rights violations that caused him personal injuries *before* his death. Ms. Johnson, as his personal representative, seeks to recover damages

8

for those that are traceable to Defendants' conduct. Therefore, he suffered injuries and Ms. Johnson has standing to bring a § 1983 claim. His estate also suffered injuries *upon* his death. *See Peters*, 873 N.E.2d at 1261 (comparing survival claims and wrongful death claims). The estate seeks, through its executor, Ms. Johnson, to recover damages from his death. Thus, the estate has standing to sue because it too suffered an injury. Since the Amended Complaint relates back to the start of the lawsuit, Ms. Johnson has standing as the executor to prosecute her claims. Defendants' Motion to Dismiss is thus **DENIED** on these grounds.

> II. **Ms. Johnson's Complaint contains no allegations against several individual Defendants and those Defendants are dismissed.**

To begin, the Amended Complaint makes no allegations against individual Defendants Capannari, Weaver, Logsdon, Stanley, Grooms, Swann, or Gomulinski. (*See* Am. Compl.; *see also* Mot., PageID 238.) "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (citation omitted). Ms. Johnson thus fails to state a claim for relief against these Defendants and the claims against them must be dismissed. *See Rice v. Jones*, No. 1:22-cv-695, 2023 U.S. Dist. LEXIS 42303, at *14 (S.D. Ohio Mar. 10, 2023) (Litkovitz, M.J.), *adopted by* 2023 U.S. Dist. LEXIS 75753, at *1 (S.D. Ohio Mar. 31, 2023) (McFarland, J.). Defendants' Motion to Dismiss is **GRANTED** as to these Defendants.

> III. **Ms. Johnson's state-law claim for wrongful death must be dismissed.**

Ms. Johnson's wrongful death claim against the State of Ohio is dismissed under the Eleventh Amendment, as is her claim against the individual Defendants in their official capacities. Because Ms. Johnson does not allege that she first filed her complaint against the individual Defendants in the Ohio Court of Claims, her individual capacity claims against Defendants are also dismissed under Ohio law.

9

### A. The wrongful death claim against the State of Ohio and the individual Defendants in their official capacities is barred by the Eleventh Amendment.

The Eleventh Amendment "bars all suits, whether for injunctive, declaratory, or monetary relief, against the state and its departments." *Thiokol Corp. v. Dep't of Treasury, Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993). States have immunity in federal courts from claims brought by a citizen of the same state. *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc). And since lawsuits against State officials in their official capacities are effectively lawsuits against the State itself, sovereign immunity also bars suits for damages against state officials in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). By extension, federal courts cannot hear a lawsuit against state officials for violations of state law unless the state waives its immunity under the Eleventh Amendment. *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456–57 (6th Cir. 1998) (citations omitted); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) (explaining that a federal court instructing state officials on how to adhere to state law conflicts with the principles of federalism under the Eleventh Amendment).

The State of Ohio has not constitutionally or statutorily waived its Eleventh Amendment immunity in federal courts. *See Jones v. Hamilton Cnty. Sheriff*, 838 F.3d 782, 786 (6th Cir. 2016). Therefore, the State of Ohio is entitled to sovereign immunity, as are its officials. A suit against state officials in their official capacities is, in reality, a suit against the entity of which the individual Defendants are agents, here the State of Ohio. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70–71 (1989).

To avoid the application of sovereign immunity, Ms. Johnson urges the Court to exercise supplemental jurisdiction over the state-law wrongful death claim since she has properly brought a federal § 1983 claim. (Opp., PageID 275–76 (citing 28 U.S.C. § 1367).) But supplemental jurisdiction does not override Eleventh Amendment sovereign immunity.

She next argues that employees of a political subdivision may be held liable if their actions "are malicious, in bad faith, wanton or reckless." (Opp., PageID 275.) Thus, the Court should address immunity defenses on the merits after discovery, not at the pleading stage. (*Id.* PageID 276.) Defendants are not employees of a political subdivision, but the State of Ohio itself. Further, the cases she cites relate to the defense of qualified immunity, not Eleventh Amendment sovereign immunity. (*Id.* (citing *Smith v. Gallia Cnty. Jail*, No. 2:20-cv-3089, 2021 U.S. Dist. LEXIS 123012, at *28 (S.D. Ohio July 1, 2021) (Marbley, J.) (explaining that qualified immunity is most often resolved on summary judgment)).) The Eleventh Amendment operates as a jurisdictional bar and thus must be resolved at the outset of the litigation.

Ms. Johnson's state-law claim against the State of Ohio, and the individual Defendants in their official capacities, is barred by the Eleventh Amendment and must be dismissed. The Court **GRANTS** Defendants' Motion on these grounds.

### B. The wrongful death claim against the individual Defendants in their individual capacities is barred by Ohio law.

Defendants next argue that Ms. Johnson's wrongful death claim against the individual Defendants in their individual capacities is barred by state law. (Mot., PageID 237–38.) Ohio law says that no employee will be liable under state law for damages or injuries caused in the performance of his or her duties unless the employee's actions "were manifestly outside the scope of his [or her] employment or official responsibilities," or the "employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 9.86. The Ohio Court of Claims "has exclusive, original jurisdiction to determine, initially whether the officer or employee is entitled to personal immunity under section 9.86." Ohio Rev. Code § 2743.02(F). Therefore, a condition precedent to bringing a cause of action against a state employee in their individual capacity is that the Court of Claims must first determine whether that employee is

11

entitled to immunity. *McCormick v. Miami Univ.*, 693 F.3d 654, 665 (6th Cir. 2012) (quoting *Haynes v. Marshall*, 887 F.2d 700, 705 (6th Cir. 1989)).

There is no evidence that the Ohio Court of Claims determined whether the individual Defendants were entitled to immunity. So this Court lacks jurisdiction, and Ms. Johnson's state-law claims against the individual Defendants in their individual capacities must be dismissed. Defendants' Motion is **GRANTED** on these grounds.

Since the Court has dismissed the state-law wrongful death claim against all Defendants in both their individual and official capacities, the state-law claim is dismissed in its entirety. The Court now turns to Ms. Johnson's § 1983 claim.

### IV. Ms. Johnson has pled sufficient factual allegations, accepted as true, to state a claim of deliberate indifference under § 1983.

Ms. Johnson's § 1983 claim alleges that Defendants were deliberately indifferent to Mr. Duff's serious health conditions in violation of the Eighth and Fourteenth Amendments. (*See* Am. Compl., ¶¶ 39–50.) To state a plausible § 1983 claim, Ms. Johnson, as the executor of Mr. Duff's estate, must show that (1) Mr. Duff was denied a right secured by the Constitution; and (2) the deprivation was permitted by one acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155–56 (1978). Defendants do not contest that they were acting as prison nurses and doctors under the color of state law. Thus, Ms. Johnson's claim turns on whether Mr. Duff was denied a right secured by the Eighth or Fourteenth Amendments.

The Eighth Amendment protects people, including prisoners, from "cruel and unusual punishments." U.S. Const. amend. VIII. When the State restrains a prisoner's liberty by taking him or her into custody, "the Constitution imposes upon it a corresponding duty to assume some responsibility for [the prisoner's] safety and general wellbeing." *Wilson v. Williams*, 961 F.3d 829, 839 (6th Cir. 2020) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). The "treatment a

12

prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828.

The deliberate indifference framework under the Eighth Amendment includes an objective prong and a subjective prong. *Id.* at 834. To plead the objective prong, the prisoner must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* "Under the subjective prong, an official must know of and disregard an excessive risk to inmate health or safety." *Wilson*, 961 F.3d at 840 (internal quotation marks omitted). "It is enough that the official acted or failed to act despite [their] knowledge of a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 842). Yet "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

To assess the objective prong, the Court analyzes whether Mr. Duff was exposed to an objectively serious risk of harm or had a serious medical need. *Glover v. Chandler*, No. 23-1804, 2024 U.S. App. LEXIS 8893, at *3 (6th Cir. Apr. 12, 2024) (citing *Farmer*, 511 U.S. at 834); *see also Turner v. City of Taylor*, 412 F.3d 629, 646 (6th Cir. 2005) (requiring the existence of a sufficiently serious medical need). Ms. Johnson argues that Mr. Duff had experienced "serious health concerns and infections" for two months prior to his death that exposed him to a serious risk of harm. (*See* Opp., PageID 281.) Defendants' Motion brushes past this factor and focuses its attack the subjective prong. (*See* Mot., PageID 240–42.)

The Sixth Circuit has acknowledged that "[t]he COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Wilson*, 961 F.3d at 840. "The transmissibility of the COVID-19 virus in conjunction with [a prison's] dormitory-style housing—

13

which places inmates within feet of each other—. . . presents a substantial risk that [inmates] will be infected with COVID-19 and have serious health effects as a result, including, and up to, death." *Id.* (discussing the infection and fatality rates and the Elkton Bureau of Prison's facility). Mr. Duff was diagnosed with COVID-19 in January 2022. (Am. Compl. ¶ 25.) Three months later, on April 3, 2022, at 21-years-old, he died allegedly from complications from "pneumonia, SARS, Covid-19, MRSA, and a severe kidney infection." (*Id.* ¶¶ 10, 38.) Thus, for the purposes of the Motion to Dismiss, the Court finds that Mr. Duff was incarcerated under conditions that posed a substantial risk of serious harm given the unique risks that the COVID-19 virus posed to inmates. Ms. Johnson has sufficiently pled the objective prong.

Under the subjective prong, Ms. Johnson must show Defendants "knew of and disregarded an excessive risk to [Mr. Duff's] health or safety." *Helphenstine v. Lewis County*, 60 F.4th 305, 315 (6th Cir. 2023). To satisfy this component, the defendant must possess a "sufficiently culpable state of mind." *Broyles v. Corr. Med. Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012). "Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence or even gross negligence, will not suffice." *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835–36). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838. The key inquiry is whether Defendants "responded reasonably to the risk." *Id.* at 844.

Accepting the facts as true, as the Court must on a motion to dismiss, the factual record raises a reasonable inference that the medical staff knew that Mr. Duff suffered from more than just an irritated bug bite or burst boil. Upon his initial COVID-19 diagnosis, Nurse Hartley noted his eyes were red and jaundiced, which is not a typical symptom of the COVID-19 virus. (Am. Compl. ¶¶ 25–26.) He continued to experience symptoms and reported a severe headache and sore

14

throat two weeks later. (*Id.* ¶ 28.) In March, when the purported bug bite or boil burst leading to an abscess, Nurse Reif "noted cellulitis" and that "there was a concern for hepatitis." (*Id.* ¶ 33.) After he complained of illness again on March 19, 2022, Nurse Moody-Betley noted that while the wound was healed, he had a history of staph infection. (*Id.* ¶ 34.)

Despite the concerning medical diagnoses, the record does not reflect that Mr. Duff was seen by medical professionals for the two weeks just before his death. As Ms. Johnson argues, this is peculiar given that, until that point, Mr. Duff was seen by medical staff every four to seven days. (Opp., PageID 281.) Mr. Duff, who was 21 years old, became so sick he died within 24 hours of medical professionals finding him in his cell. (Am. Compl. ¶ 10 (Mr. Duff was born in 2001).)

The Court acknowledges that Defendants took several actions in response to Mr. Duff's various medical conditions. But Ms. Johnson cabins her claim to the time between March 19, 2022, when Mr. Duff last saw medical staff, and April 3, 2022, when he passed away. (Opp., PageID 281.) The known risks associated with complications from the COVID-19 virus, coupled with concerns noted by the nurses that Mr. Duff had cellulitis, a staph infection, or hepatitis, suggest that Defendants knew of the serious risks posed to Mr. Duff's health. Despite this knowledge, the record does not show that he was seen by medical staff for the two weeks just before his death, when his condition worsened.

Ms. Johnson ultimately pleads enough, accepted as true, that Defendants knew of and disregarded an excessive risk to Mr. Duff's health. *See Wilson*, 961 F.3d at 840 ("It is enough that the official acted or failed to act despite [their] knowledge of a substantial risk of serious harm."). Additional discovery will allow the Court to better analyze whether Defendants responded reasonably to the risks posed to Mr. Duff's health. Based on the facts alleged now, the Court cannot conclude that Defendants responded reasonably to the risk posed to Mr. Duff. Defendants' characterization of the medical record cannot defeat the contrary allegations of inadequate care in

15

Ms. Johnson's Complaint. If Defendants' characterization is well-supported after development of the record, they may renew their arguments on summary judgment.

Accordingly, Defendants' Motion to Dismiss is **DENIED** on these grounds, and Ms. Johnson may proceed on her § 1983 against Defendants Moody-Betley, Reif, Thompson, Dr. Raja, Woldehiwot, and Hartley.

## CONCLUSION

For the reasons above, Defendants' Motions to Dismiss (ECF Nos. 21, 53) are **GRANTED IN PART** and **DENIED IN PART**. Ms. Johnson's claims against Defendants Capannari, Weaver, Logsdon, Stanley, Grooms, Swann, and Gomulinski are **DISMISSED** for failing to state a claim for relief. Her state-wrongful death claim is **DISMISSED** under the Eleventh Amendment and Ohio Revised Code § 9.86. She may proceed on her § 1983 deliberate indifference claim against Defendants Moody-Betley, Reif, Thompson, Dr. Raja, Woldehiwot, and Hartley.

The Clerk is **DIRECTED** to terminate as Defendants the following parties: the State of Ohio, Jennifer Capannari, Randall Weaver, Chris Logsdon, Amber Stanley, Brenda Grooms, Kayla Swann, and Nicholas Gomulinski.

This case remains open.

**IT IS SO ORDERED.**

**3/29/2025**                                    s/Edmund A. Sargus, Jr.
**DATE**                                          **EDMUND A. SARGUS, JR.**
                                                   **UNITED STATES DISTRICT JUDGE**